UNITED STATES *v.* STUBBLEFIELD.

SAME *v.* BISHOP.

*(District Court, E. D. Missouri, E. D.* November 8, 1889.)

**INTOXICATING LIQUORS—WHAT CONSTITUTE—ILLEGAL SALES.**

"Lemon Ginger" and "Empire Tonic Bitters" are sold by the bottle as medicinal preparations, and are believed to possess curative properties. They consist of about one-third alcohol, and the residue of distilled water and extracts from herbs, etc., and the quantity of alcohol is not greater than is necessary to extract and retain the virtues from the herbs, and is less than is contained in some ordinary tinctures. *Held,* that they are medicinal preparations, and dealers in them are not liquor dealers, within the meaning of Rev. St. U. S. § 3244, defining a liquor dealer as one who sells "distilled spirits or wines," though they are intoxicating, if used immoderately.

Indictments for Selling Liquors without License.

*George D. Reynolds,* Dist. Atty.

*Lee & Ellis,* for defendants.

THAYER, J.   In these cases the question to be determined is whether persons who sell "Lemon Ginger," manufactured by the Collins Bros. Drug Company, and "Empire Tonic Bitters," prepared by the Donell Manufacturing Company, are retail liquor dealers, within the meaning of section 16 of the act of February 8, 1875, amendatory of the internal revenue laws.   This, of course, involves the further question whether the compounds referred to are "distilled spirits or wines," as section 3244, Rev. St. U. S., defines a retail liquor dealer to be a person who sells "foreign or domestic distilled spirits or wines in less quantities than five gallons."   From the testimony in the case, it appears that "Lemon Ginger" has been patented as a useful medicinal preparation, and that about one-third part of the same, by weight, consists of dilute alcohol. The residue is distilled water and lemon juice, mixed with extracts from six different herbs and roots.   The percentage of alcohol by weight in the compound known as "Empire Tonic Bitters" is a trifle less than one-third, and the residue of weight is made up of distilled water and extracts from certain medicinal barks, leaves, roots, berries, etc.   The two compounds, "Lemon Ginger" and "Empire Tonic Bitters," do not differ sufficiently in their composition or effects to justify any distinction between them in determining whether they ought to be classified as medicinal preparations or as distilled liquors.   It is obvious that either preparation contains enough alcohol to produce intoxication, if that is the sole test to be applied.   It appears from the testimony that both preparations are put up, advertised, and sold by the manufacturers as medicinal preparations, and that each possesses, or at least is believed to possess, curative properties, when used for certain disorders, and in the manner directed by the manufacturers.   It further appears with respect to one of the preparations (and I presume that the same may be said of the other) that the quantity of alcohol employed is not greater than is necessary to ex-

tract the virtues of the medicinal herbs employed, and hold the same in solution, and that the quantity used is less than that contained in some ordinary tinctures. These compounds, so far as the evidence discloses, are sold by the bottle by retail dealers, and are not sold over the counter, like ordinary intoxicating beverages. On the facts stated I see no ground for dissenting from the ruling of the commissioner of internal revenue heretofore made, that these preparations, "Lemon Ginger" and "Empire Tonic Bitters," should be classed as medicinal preparations, and hence that dealers in the same are not wholesale or retail liquor dealers, within the meaning of the law. The fact that men with a strong appetite for drink may occasionally buy one of these preparations, and by an immoderate use of the same become drunk, is not an adequate reason for classifying them as distilled spirits. It is safe to assume that alcohol enters into the preparation of some other compounds, that no one would think of classifying as distilled spirits, in such quantity that a man might be made drunk by imbibing them too freely. The fact, therefore, that a mixture possesses so much alcohol that persons may become intoxicated by drinking such a quantity as may be drunk without imperiling life, cannot be accepted as the sole test by which to determine if the mixture should be classed as distilled spirits, and dealers therein as liquor dealers. If a preparation is not intended as a beverage, but is put up in good faith as a medical preparation, and is only advertised and sold as such, and there are reasonable grounds to believe that it possesses curative qualities, and no more spirits are used in the preparation than are reasonably necessary to extract and hold in solution the medicinal properties of the various drugs employed, such preparation is medicinal, and does not lose its character as such, although it is intoxicating when used to excess. The defendants in these cases will be discharged.