## JIM JEFFRIES v. STATE.

No. A-7344. Opinion Filed May 31, 1930.
(288 Pac. 987.)

Eaton, Carter & Carter, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was jointly tried with Will Jeffries on a charge of murder; Will Jeffries was acquitted, and the defendant, Jim Jeffries, was convicted of manslaughter, and sentenced to serve a term of four years in the state penitentiary. Motion for new trial was filed and overruled and exceptions saved, and the defendant has appealed to this court.

All of the parties concerned in this homicide are negroes living in the vicinity of Haskell, Okla. On the day prior to the killing at night, Will and Jim Jeffries. Allen Grayson, and his brother Ray were all in the town of Haskell. Late in the afternoon Allen Grayson invited the Jeffries boys to his home. They arrived at the Grayson home about 8 o'clock that evening. The family of the deceased consisted of his wife and his brother Ray. The testimony shows that after a short while they went into the kitchen for the purpose of having a dice game. The game lasted until about 12 o'clock. There was a small amount of money in the game, and the testimony indicates there was some whisky. The Jeffries car was in the road about 60 feet from the home of the deceased, Allen Grayson. When the game broke up, there was some controversy about getting some more whisky, or playing for some whisky that was not in sight. Jim and Will Jeffries testify that, as Jim was leaving the house of the deceased, Allen Grayson, Allen kicked Jim twice.

The defendant, Jim Jeffries, testified: That he had never had any trouble with the deceased prior to the night of the homicide. That, after he left the house of the deceased and was cranking his car, the deceased came to the car where he and his brother were. Deceased had a pistol and was in an angry mood.

"I said, 'Allen, let's don't have any trouble over this stuff I have; I will give it back to you; I don't want to lose your friendship.' And he says, 'No, God damn your friendship, I don't want your friendship.' About that time he was standing by my car. I walked around to the fender like, trying to reason with him. He got out his gun. When I saw the gun, I grabbed for it. As I was grabbing for it, it was discharged, and I got my hand on it, and we had a tussle over the gun. In the tussle, this trouble happened. The gun presented to me looks like the gun the deceased had that night. I took the gun with me when I went away from there. We were tussling one way and another, and I couldn't tell how the gun went off. I was trying to get the gun from him to protect myself. As soon as I could see I had possession of the gun, I went off. I did not know Allen Grayson had been shot. I kindly had an idea he must have been by the noise his wife made after I went off. When we broke up the dice game, I put the dice in my pocket. The dice here are the ones we used that night. After the shooting, I went to Mr. Swanson's house and delivered the gun to him. I had what whisky I had won off of Allen, and I turned that over also."

On cross-examination, witness stated when he left the deceased he did not know he had shot him.

There are several pages of the record taken up with testimony of different occurrences prior to and after the shooting. The foregoing is, in substance, the testimony that is material in the case.

The defendant has assigned six errors alleged to have been committed, but discusses only two of them, which

go to the sufficiency of the evidence to sustain the conviction.

It appears from the testimony that the deceased, Allen Grayson, and Will and Jim Jeffries were good friends on the afternoon of the evening of the homicide. They left the town of Haskell together and went to the home of the deceased, where they voluntarily entered into a dice game. The testimony of the defendant and his brother Will is that the deceased became angry, and they had some conversation back and forth between them about getting more whisky to gamble for, and finally the game broke up, and the defendant insists that, as he was leaving the home of the deceased, the deceased kicked him one or more times; that before they got the car started the deceased came out to the car with his gun and another conversation took place, and the defendant insists that he tried to pacify the deceased and told him he would return the things he had won from him, that he wanted his friendship, and the deceased said he did not want his friendship, and drew his pistol. The defendant claims he grabbed the pistol and the pistol was discharged while they were scuffling and the deceased was wounded, from the effects of which he died.

All of this testimony was presented to the jury, and the jury found the defendant guilty of manslaughter and assessed his punishment at four years in the penitentiary.

In Kirk v. State, 32 Okla. Cr. 361, 241 Pac. 205, this court in the third paragraph of the syllabus, said:

"The jury are the exclusive judges of the credibility of the witnesses and the weight and value of the evidence, and may find a defendant guilty from the inferences arising from circumstantial evidence and disbelieve positive evidence to the contrary. In such case, where from the evidence different inferences may be drawn, this court will

not substitute its judgment for that of the jury and reverse the judgment."

Whitten v. State, 25 Okla. Cr. 447, 221 Pac. 115; Halsey v. State, 42 Okla. Cr. 221, 275 Pac. 405; Burrows v. State, 43 Okla. Cr. 256, 277 Pac. 685.

The credibility and weight and value of the evidence, and the inferences to be drawn from it, is for the jury, and, where the evidence is such that the jury would reasonably and logically find the defendant guilty, the verdict will not be disturbed. The evidence is sufficient to sustain the judgment.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.