TEEL JOHNSON v. STATE.

No. A-8996. March 20, 1936.

(55 Pac. [2d] 1047.)

J. N. Fortner, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, for convenience hereinafter referred to as the defendant, was jointly charged with Dut Burris, was tried separately and convicted of an attempt to rob, and his punishment assessed at five years in the state penitentiary.

The testimony on behalf of the state in substance is as follows: R. B. Chatham and Jerry Samuels were in the city of Idabel on the 3d day of February, 1933, and drove out in the country; while out in the country they drank some home-brew. They returned to Idabel about sundown, and it was suggested that before they went to get their supper they drive down in what is known as negro town and buy some whisky. They drove down into negro town to the home of Mary Jane Elliott and stopped. The defendant, accompanied by Dut Burris, came to the car and asked them what they wanted, and they told them they wanted to get some whisky, and gave the defendant a dollar, and he and Dut Burris left the car and were gone several minutes. When they did not return, Samuels and Chatham became uneasy, and Samuels got out and started to see what was the matter, and about that time defendant and Burris came out of the house and

pitched a bottle of whisky in the car, and, while they were talking, they discovered Dut Burris was trying to take the spare tire off the car. They stopped him from taking the tire, and, as the car door was open, he climbed in the car on Chatham and began to punch Samuels with his fist, demanding that he give him money. Chatham told the defendant he did not have any money but the $1 he had given him for the whisky. The defendant was on the side of the car next to Samuels, and demanded money of Samuels, and finally jerked Samuels out of the car. Samuels got his knife out and cut the defendant, and Dut Burris run around, and he cut Burris. Chatham then got the car started and drove away, and Samuels walked off. This is the testimony offered by the state.

The defendant denied he demanded any money from either of the men, and states he refused to deliver any whisky to Samuels, as Samuels at one time, while acting as an officer, had bought whisky from the defendant and then turned him in, or "snitched" on him, to use the defendant's expression.

Mary Jane Elliott and two or three other negroes testified that Johnson and Burris did not come in the house after the car the defendant was riding in came up, and they did not say anything about trying to rob the defendants. Then they detail the fact that the defendant cut the two negroes with his knife.

The record shows that Burris was in the penitentiary at the time of the trial, but does not show on what charge he had been sentenced.

There is a direct conflict in the testimony; the defendant and two or three negroes testifying positively that the defendant did not come in the house after the car drove up. The defendant says he did not go in the house

to get any whisky, and states positively he did not try to rob either Samuels or Chatham or demand from either of them any money. The testimony of Chatham shows the defendant did not make any effort to take anything off of Chatham and Samuels, or take anything out of the car, but states that 50 cents was all the money he knew of in connection with the trouble. The defendant took the whisky back. The trouble occurred on the street.

The testimony as herein set out is all that it is deemed necessary to refer to. It is shown by the record that these two men went to what is known as negro town, one of them was a white man and the other a Choctaw Indian, after returning from the country, for the purpose of getting whisky; say they paid for it, but the whisky was taken from them by the defendant; that Burris was trying to take this spare tire; and that both the defendant and Burris got in the car demanding money; that is denied.

A number of errors have been assigned by the defendant, but the only error necessary for this court to consider is, Is there sufficient testimony to sustain a conviction? That question has been before this court so many times, and the court has on each occasion in passing upon the question held that, where the evidence is conflicting, it will not substitute its judgment for that of the jury. Cain v. State, 37 Okla. Cr. 282, 257 Pac. 1114; Keesee v. State, 46 Okla. Cr. 405, 287 Pac. 813.

This court has further held that, where there is any competent testimony, though conflicting, to sustain the verdict and judgment, it will not disturb the same. Dixon v. State, 46 Okla. Cr. 25, 288 Pacfl 357; Jeffries v. State, 47 Okla. Cr. 408, 288 Pac. 987; Andres v. State, 51 Okla. Cr. 229, 1 Pac. (2d) 178.

It is next urged by the defendant that, although the testimony be sufficient to sustain the conviction, the punishment imposed is excessive, and should be modified. The Attorney General in his brief states:

"The modification of the punishment in this case is a matter addressed to the sound discretion of this court, and if the court in its judgment thinks the punishment excessive, the Attorney General will not seriously oppose a modification of the same."

After considering all the facts in this case and the briefs of the plaintiff in error and the Attorney General, we believe the maximum punishment imposed upon the defendant in this case is excessive.

We find white men going into a negro community late in the afternoon or early evening seeking to buy whisky from the negroes. One of the negroes they encountered had been turned in on a previous occasion by one of the men who had driven down to buy the whisky. A controversy arose and a fight ensued, where one of the white men stabbed both of the negroes, and they ran away. The white men had put themselves on an equal with the negroes when they went to the negro community to buy whisky, and while the testimony, as stated herein, is conflicting, it is sufficient to sustain the conviction. We believe the punishment to be excessive, and, under the authority given by the statute, the punishment is modified from five years' imprisonment to two years, and, as modified, the judgment is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.